Here this morning, Board of Trustees v. Four-C-Aire, and whenever you're ready, Ms. McDermott will hear from you. May it please the Court. I want to first start by briefly addressing the procedural issue that was raised by the Court before getting to the merits of why I believe Section 515 of ERISA governs this case. This Court has jurisdiction in this case because there was no manufactured finality. The only claim not disposed of through the District Court's motion to dismiss was a claim for delinquencies owed for a period of January 1st, 2015 through April 30th, 2016. That claim was dismissed by the parties only after they entered into a settlement agreement resolving that claim. Let me ask you about that because I've found the supplemental briefing by you all and by the opposing counsel to be a little confusing and perhaps contradictory, so we'll see if we can figure that out. You have a claim for contributions that were to be made by the employer from January 1st, 2015 through April 30th, 2016. The settlement agreement, I take it, is not in the record. The settlement agreement is not in the record. That's correct. What I took from your supplemental briefing was that whatever the employer had reported as the wages that would be subject to a contribution, you agreed to accept that, but you had to do an audit to determine accuracy. There could be additional sums for the same period that you plead in your complaint for your cause of action. How could there be a final settlement when you don't have a settlement amount and you haven't come to an agreement as to what that dollar amount is? The claim made in the amended complaint was for known delinquencies. As you said, this was based on the employer's self-reporting of hours worked by employees. The complaint said known delinquencies? How would you know the delinquency if you haven't had the occasion to do discovery or take an audit? We knew the delinquencies for that period of time because the employer self-reported hours. You know what they claimed that they owed you, but you didn't bring an action for what the employer claimed they owed you. You brought an action for what was due under the contractual obligations. I understand some of the confusion, but it is kind of a claim based on what the employer agrees that they owe you because our claim was based on the employer self-reporting. It was an issue of first impression decided by... If you settled on that basis, you wouldn't need to do an audit. This is why the ability for the fund to do a future audit was accepted from the dismissal of the other claim. That's because in the lower court below, it was an issue of first impression about whether or not it was claim precluded. I think that makes perfect sense, but that doesn't answer the finality question because it seems like to me you have one claim, and that's for this 16-month period. We claim whatever is owed to us under the contract, and we know what part of that amount is, but we don't know what the whole amount is. That's what bothers me about saying there's finality because you've settled part of the claim, but not the whole claim. It wasn't until this district court's decision that the fund was precluded from bringing a subsequent audit claim for the same period of time. At the time that we brought suit, the only claim that we had was we had not conducted an audit. The claim that we were bringing at the time was for the delinquencies based on the self-reporting. Prior to the district court's decision, the pension fund would not have been precluded from bringing a subsequent action. I believe I'm going to belabor this, but I understood your claim to be, and that's what I asked you before. Your claim is for this period of time, the trust is due whatever the trust agreement requires to be paid in as a contribution. That may or may not be what the employer reports. You'll take what the employer reports as a down payment, but that's not the end amount. That's correct. It's our position that if the audit showed there were discrepancies between the two. The course you're going down doesn't resolve the problem. It seems to me the course you should be going down is basically the settlement amounts to a consent decree, which has conditions and open-endedness, but it does end the complaint. Suits are ended with consent decrees all the time, and the court accepted the settlement. In fact, it turned out in this case that there was no more due because of the audit. Correct. But that was in compliance with the settlement agreement. Now, the one aspect that causes me pause on that argument is generally if you didn't comply with the settlement agreement, you'd have to file a new action for noncompliance with the settlement agreement, but not for the claim. And the district court seemed to reserve jurisdiction for purposes of making sure it could enforce the settlement agreement. I'm not sure that that deprived finality or not, but I think the best analogy for finality is a consent decree type of ending of a claim, and it seemed like the court did review it and the parties did submit and say that was okay and the court approved that. We would agree with that position. But that doesn't fully address Judge Agee's question, which is what you settled on was less than what you claimed because there's still a contingency that the audit would prove the accuracy of the reporting. And if it didn't prove it, then you'd be getting more or less depending on what the audit showed. But I think that could be accommodated in jurisprudence through the application of a settlement agreement that the court approved to resolve the case. But anyway, why don't you go on to your main point. Great. Oh, excuse me. I'm sorry. Go ahead. Your supplemental pleading says, we are authorized to state that the parties stipulate that there are no remaining amounts due, no remaining amounts owed for the period in question. But there's no agreement to that by opposing counsel in their supplemental brief. So are you all immune or are you intending to file a stipulation of fact that you've settled everything and what authority do you have to file that in the Court of Appeals? So counsel, after it came to our attention that this was going to be an issue on appeal, we corresponded and I asked whether or not they were in agreement that there were no remaining amounts owed for that period of time, given the fact that the audit was completed by the fund shortly after and found no discrepancies. And the counsel for 4C agreed that that was the case. So that was what our basis was for saying that the parties agree that there are no remaining amounts owed for the period in question. The question comes, though, is whether that contingency left open the judgment that the court entered or was an aspect of the settlement which ended the judgment. And we have a lot of judgments, consent decrees involving even class actions and things that have to be played out, and the courts retain jurisdiction to administer those. But those are final judgments that we review, and the contingency then becomes a claim on the settlement, but you can't go back and make the initial claims. This one's got a little bit of a hybrid in this because... I understand what you're saying.  There's not an injunction mandating you do something. It's basically a contingency that conditions the settlement amount on the audit. That's correct. And just at the very least, we would ask that this court do what it did in Waugh, which is deem the dismissal to have been with prejudice given the circumstances. So in other words, there's no longer a contingency. That's correct. We're done, right? That's correct. When your colleague gets up here, we'll see if he agrees with that, but I think it's time to go on to the merits. In collection actions by multi-employer plans, collective bargaining agreements must be interpreted in accordance with the principles of Section 515 of ERISA. Section 515 creates a federal right of action that is independent of the obligation to contribute underlying the collective bargaining agreement. In that respect, Section 515 puts multi-employer plans in a stronger position than they would otherwise occupy under common law contract principles. And it does so by imposing limits on the defenses that an employer may raise in a collection action. For example, in a particular relevance to this case, under Section 515 the actual intent of the bargaining parties, i.e. the employer and the local union, is immaterial when the meaning of the language is clear. Here, the collective bargaining agreement- You don't even get to it. Under your theory of the case, you only get to a preference arrangement under 515. I mean, in your argument, we have a contract. It's incorporated by reference. The trust provisions, they're entitled to equal dignity with any other provision of the contract. That's it. Yes, that is our position. The reason why we get to 515 is because the district court engaged in analysis, which was not argued by either party below, in which it applied contract law principles that we believe directly conflict with Section 515. I think you'd understand that, though, because the contract, the bargaining agreement was between the union and the association. And the forcier here gave its authority to the association. The association had authority to bargain for all the employers. That's right. And the CBA had an agreement that we're going to incorporate the trust, as well as amendments to the trust that are duly adopted. And the trust did adopt an amendment. And now the district court comes and said, well, forcier didn't know about it, and therefore isn't bound. But they don't have to know about it under that type of structure. That was negotiated for them on behalf of the employers' association and the union. And the changes to the trust agreement, you alleged in the complaint they were made. Now, I suppose they could challenge at a trial that they were not duly made, and then that wouldn't be binding if they were not appropriately amended. But at this point, we're on 12b-6, aren't we? That's correct. So any issues, I mean, it's our position that the amendment procedure was in compliance with our, the procedures required by the fund. But any issue related to that. You said it was amended. That's correct. And you accept that to be true at this point. Now, they may disprove that as an affirmative defense or with proof. But any amendments made to the trust are incorporated in CBA. And it seems to me that's sort of a straightforward thing. And I don't know where this idea that forcier had to be, was a participant. They didn't even negotiate it. We agree that their intent, even under traditional contract law principles, is irrelevant given the fact that they signed on to a Me Too agreement. A Me Too agreement is authorized under the labor laws. And that's an ERISA. All right. Do you have anything further? I would just like to say that under both. Let me ask. So is it absolutely necessary that we have to consider the merits of the validity of the amendment? Or is the trust document itself sufficient to establish the withdrawal liability in this case? The withdrawal liability or an exit contribution? I'm sorry, the exit contribution. So your question was whether or not we have to get to the validity of the amendment. Well, I guess the way this agreement reads is forcier agreed in the terms of the pension fund to pay an exit contribution in the event of an ERISA withdrawal absent statutory liability. And why isn't the withdrawal from the CBA or the exit from the CBA one of those conditions that requires the payment of a liability payment, exit contribution? A withdrawal liability payment? Yeah, right. So in this case, the amount of the withdrawal liability fell under the de minimis provision? Yeah, but absent statutory liability, why aren't the terms of the agreement itself sufficient to encompass this particular payment? We believe that they are. So we don't even need to get to the amendment, right? Well, so there was an issue about whether or not the timing of when the exit contribution was assessed. So the trust document contained a provision requiring the payment of an exit contribution under these circumstances. And then the amendment, what it did was added clarifying language stating that that obligation to pay an exit contribution explicitly continued beyond the expiration of the collective bargaining. And is it your position that the agreement under its original terms did not provide for that contingency? It's our position that the agreement under its original terms did. However, the district court in the Eastern District of Virginia in the Cato case analyzed this exit provision and found that it did not contain the terms. So that was a response to this decision? That's correct. All right. Thank you. All right. Mr. Polk. May it please the Court. The district court's initial question that we'd like to ask you is, in the opposing counsel's supplemental briefing, as I asked counsel, they say that you all have stipulated that there are no remaining amounts owed for the period from January 1, 2015 through April 30, 2016. Is that accurate? We responded that it was. So I don't, I'm not, all I'm interested in, is that an accurate factual statement? Yes, Your Honor. My client said that to their understanding that there was no payments left. That was their understanding. But that still does not cure the jurisdictional defect here. Your Honor. Putting that to the side, in terms of the count in the complaint that claimed contributions from January 1, 2015 through April 30, 2016, that's settled between the two parties? That's, our understanding is that there are no sums owed. That's what my client told me, that there was no sums owed after the audit. But jurisdiction is determined. Wasn't there a settlement? Yes, Your Honor. There was a settlement. Well, I mean, you're ducking the word settlement, and there was a settlement reached, and the court approved the settlement, right? The court approved the settlement but left open. Well, I know that was part of the settlement agreement. I'm not sure. It was subject to an audit. I'm not sure if that was. I have not seen the settlement agreement because it was not part of the record, so I am not sure that that is accurate. What do you want in this? I mean, I don't understand it. There's nothing. You're not claiming anything. There was a settlement agreement. The contingency in the settlement agreement is satisfied. You want us to go back and have the judgment entered and come back up? We believe that the rules should be followed. Rule 54B. You want us to remand it and have the final sentence? Is that what you're asking? Yes, Your Honor. This should be dismissed because this court has no jurisdiction. Rules matter. But the contingency in the settlement agreement that provided for the audit and the possibility that there could be additional contributions above and beyond what was in the initial settlement agreement, that has ended between the parties. First of all, I can't represent the court of a contingency in the settlement. All that I know is from the terms of the documents filed was that it was Let's go back here. So the settlement agreement left open the possibility that there could be additional amounts owed and that there was to be an audit. What I want to know, if you know, I mean they're your client, has that been settled? There are no amounts due from any audit or anything else. That period has ended. Either it is or it isn't. Our understanding is that there are no sums left remaining. That's what I know from my client. There are no sums left due. I cannot represent to the court that there's any stipulations or anything like that that's open within the settlement agreement because I have not seen the settlement agreement. I have seen, what I have seen is the record that's before this court. There is a settlement agreement. If you didn't, I thought it was an agreement. You never saw it? I have not seen the agreement. I was not trial counsel. I'm appellate counsel. I've only seen what you've seen. I find the fact you're appellate counsel. Your client saw it, right? And counsel saw it. I mean there was an agreement. I can't represent to the court what it says because I personally don't know. No, but it's unacceptable to us to have you say there was no settlement agreement because I didn't see it. You have to represent there was none because there's a representation and the court accepted the settlement agreement. And your party apparently signed it. There is a settlement agreement, Your Honor. I just don't know the specific terms of it. All right. Now the question that Judge Agee asked is whether the settlement agreement has been satisfied. And you say, I don't know. I don't know if there was any specific contingencies, if there was any contingencies that are still remaining. All I know How can you be making your arguments that you're making on jurisdiction if you don't know the answer to that? I can make a jurisdictional argument, Your Honor, based on what the record says, which is that there is a carved out, the particular claim of those 16 months of which the party could bring litigation. And the record shows that that was settled and it was subject to an audit and there's a representation that the audit provided for nothing further and you're confirming that. Now I don't understand why you're unwilling to say that the settlement was thus satisfied. All I can say, Your Honor, is that my client has told me that there's no amounts due and we can stipulate to that. That's all I can say. All right, why don't you go on to the next argument. Second of all, Your Honor, the Board of Trustees below waived any argument that Section 515 precludes any application of contract principles. Let me get to the gut of this thing. We have a CBA that's entered into between the union and the Sheet Metal Contractors Association. They negotiate a CBA. The CBA agrees to be bound by any amendments to the trust agreement, as may be made from time to time, and the trust agreement itself. The trust agreement was entered into separately and it was amended, allegedly, in the complaint. Yes, Your Honor. And the amendment says that you're going to be responsible, even beyond the termination of the CBA, for the amount. What are you calling that amount? Exit contribution. The exit amount. That's what the amendment says, right? Yes, Your Honor. All right. That's what's alleged in the complaint, and they say, basically, you haven't paid that exit contribution as required by the trust. Now, you're saying, because the only thing I see in your argument is that you're saying, because we didn't know about it, we're not bound? No, Your Honor. Not that we don't know about it. Why aren't you bound by that amendment? Because the durational clause in the CBA expired and the Supreme Court has held. All right. Just a minute. Let's get to the facts first, not only the law. The amendment says you're bound beyond the end of the term agreement, right? The secondary document that was amended. The amendment, right. And that's the amendment to the trust. And you can challenge whether it's a legitimate amendment at trial, but they allege that it was amended to say that. Yes, Your Honor. Okay. So you had two obligations that extended beyond the end of your CBA. One was what, arbitration aspect, and the other is this exit contribution. And while it says right on its face you're due beyond, it's bound by the exit contribution. Well, the durational clause doesn't say anything about the incorporation clause. About the incorporation clause, it includes the amendments, just to be clear. The CBA incorporates the trust agreement and incorporates amendments made to the trust. Right. So that's what they allege in the complaint. Right. The trust agreement provides that you have to make an exit contribution even after the CBA expired. They say that's an independent obligation. And they're suing on that provision. Right. Now, what is your defense to the obligation of that amendment? The obligation is that the CBA terminated and did not, in this particular provision, that was not explicitly stated in the durational clause of the CBA. It's a matter of ordinary contract law. If there are contract terms, then the terms of the incorporated document, unless there's something specifically to the contrary in the contract, those are now all part of one contract, and they are terms of equal dignity. So I don't understand why you give the durational section some superpower here that basically ignores the incorporated documents, which are part of the contract. Right. And are there specific provisions that deal with contributions? Well, the durational, the way the Supreme Court has directed in its various cases, is that the durational clause and the responsibility of the employer expires, terminates upon the date that the CBA itself terminates. That would be true under polymers or whatever they call that case. Polymers, yes. With respect to extraneous agreements. But this is all part of one agreement. The incorporated document, Your Honor, but still the issue is that it was never expressly incorporated within that durational provision. That's the issue. What difference does that make, though? It's part of the contract. Well, then, if it's not part of the durational provision, Your Honor, and then the CBA expires, it's the CBA itself that creates the obligation. So one of our defenses would be, and one of the reasons why we can express our waiver argument, we never got to argue this, was because if they had made the argument that 515 applied and there was this heightened canon of construction that applied to that statute, they never made that argument below, we could argue in response that 515 does not preclude us from also arguing termination of the CBA. But the termination of the CBA has been modified explicitly. It says the employer's obligation to pay an exit contribution under this Section 6 is independent of the employer's collective bargaining agreement and continues to apply after the termination of the collective bargaining agreement, notwithstanding any language to the contrary in the collective bargaining agreement. That's what they're suing under. And the question is, are you bound by that provision? Well, we would say that that provision, as the district court found, that would be unenforceable. It's what? The provision itself, if you want to stick with ordinary contract provisions, that amendment itself would be unenforceable because it places unilateral authority in their hands to amend the agreement. This was an agreement. The fund's hands. The fund amended its trust to create that obligation. Right. Unilaterally. Without notice. I don't know how. It doesn't matter how they did it. You can challenge the amendment, I'm saying. But the whole agreement is between an association and a union, not between you. You authorized the association to negotiate this. So whether you knew about it is irrelevant. But the question is, they're suing under this provision, which says notwithstanding any language to the contrary in the collective bargaining. Now they allege in their complaint that you're bound by that. And you've moved to dismiss somehow that that's not applicable. That they can't, as a matter of law, make a claim under that. We moved to dismiss because our belief was that, and it's still our contention, that they cannot enforce that after the expiration of the CBA. Even though it says, this isn't, let me ask you, does their claim fall within the language of that amendment? Does their claim fall within the language? Yes, Your Honor. The plain language of the amendment, yes. So you're arguing that the amendment's not applicable. We're arguing that the durational clause trumps the amendment. This says just the opposite. Well, our position is, based on Supreme Court precedent, is that any obligation of... What specific Supreme Court case do you say gives you that precedent? Well, just the recent Supreme Court decision, Your Honor, and their reasoning, we believe . . . Tell us which one is our best Supreme Court case. Well, our primary cases is M&G Polymers v. Tackett and CBH. What did they say? Is that your best one, Tackett? Those cases, as the district court noted, those cases found that . . . We went through this a little bit ago. Sure. Because that case did not deal with the issue we have here, which is the contract interpretation of incorporated documents. There you had extraneous documents. Right. So I don't think you've got a precise precedent here for what you're arguing. Well, Your Honor, I think the reasoning of those cases, that the CBA itself, an expiration term of the CBA, controls. Well, let me ask you, so with respect to that, I understood the complaint to allege that that termination, that of the CBA, was itself an event of withdrawal under ERISA, and because in absence of statutory liability, that that withdrawal and termination of the CBA was enough to require the payment of an exit contribution, irrespective of whether or not there was an amendment to the trust document. What's your position with respect to that? If the ERISA amount was enough, and if there was enough, then potentially under ERISA there could be this liability. No, it's clear that this isn't enough, but I thought I'd read their complaint to say, regardless of the amount, once the CBA expired, that was an event of withdrawal, which required the payment of an exit contribution, absent statutory liability. I mean, they seem to have put this amendment in the agreement simply to respond to the earlier district court opinion, but their position I think has been that they don't even need that amendment, but the agreement itself, the trust agreement itself, is sufficient to compel a payment. I believe that the district court was correct in finding earlier that they could ask for that. They could have asked for that amount in the Cato decision. The court said, yes, you can ask for that amount once you have notice of our termination. So termination under the CBA was provided 90 days before the termination date. So under ERISA, the time when you would make that demand would be within those 90 days. But once the CBA has expired, your rights to the exit contribution, your rights to enforce the CBA are no longer alive. So what happened in CAVO was because they did not follow that procedure, did not seek payment within that 90 days once notice of termination was So what the trust did unilaterally in response to that was to try to incorporate unilaterally and place this extremely onerous exit contribution and make it live past the CBA. Yeah, I guess you're also making an assumption as to what happened. I suppose you know what happened, but at least at this stage, we don't assume that the amendment was done unilaterally. Well, you mean unilaterally without our knowledge? Yeah. Well, it's not pleaded. There's no pleading, nothing pleaded that says that we were ever provided notice. Right. And Judge Niemeyer's point is you can litigate that later on, but at least at this stage there appears to be enough to get past the pleading stage. But the problem is, is the CBA, if the duration clause in the CBA does not incorporate the amendment and the amendment is therefore invalid, or if the contract offenses, which we believe the district court properly applied, prevent enforcement of this unilateral obligation, then there's no need for... You keep calling it unilateral. The parties negotiate these things. You weren't even involved in the negotiation of the CBA. That was negotiated on your behalf by the association. Correct. And I don't know what the provisions of the trust agreement are, who participates in that, but I assume the same parties participate in that, negotiating amendments. And we have a complaint that we have to accept the allegations as true. And at this point, they get around both Taggart and Caddy by saying, well, Taggart basically says an illusory claim. They said there was a generalized promise is terminated with the end of the CBA because it's a CBA requirement. But this amendment is as explicit as can be, that this is a trust pension fund agreement that you have entered into through your representatives in order to pay this fee, this exit contribution. Exit penalty, yes. Beyond the CBA, and notwithstanding the CBA, they say it's an independent claim, and that's what they're suing under. And you say you're not a party to that, but if they were negotiating on your behalf, that is the association, the Sheet Metal Contractors Association, was unauthorized to negotiate that on your behalf, you can allege that. And you can try to prove that. But it seems to me at this stage, they're saying the association negotiated these agreements on your behalf, and they're binding, and there's two agreements. There's the CBA, and there's a pension fund agreement. And the CBA incorporates the pension fund, and you've agreed to the pension fund agreement, too. And now you say, well, this provision overrides the duration of the CBA, but that was the agreement. It says it overrides it. It says it's independent of it, even after the CBA ceases to exist. That's what it says explicitly. Now, they say you have participated in this, and you owe this as part of your obligations to the pension fund. And you can say, prove anything as a defense, like we didn't negotiate it, we didn't get notice. I don't know if any of those are legitimate defenses, but they've alleged a contract that you've breached. Now, how do we get around a 12B6 allegation and saying, oh, but you didn't agree? Well, there's one other problem with their argument. I think the Supreme Court also identified in those cases, and that is Section 1145 provides that it's the CBA that gives rise to the obligation. So it's the CBA. So the idea that there's this independent floating secondary obligation, independent of the CBA, I think is itself is problematic. The CBA says you agree, as a party to the CBA, to be bound by the pension trust agreement. And the employers, quote, agree to be bound by any amendments to said trust agreement, as may be made from time to time. And they say they made an amendment that created an independent obligation under the pension plan. This is created by the authority of the CBA. Under the pension plan, there's an independent agreement to pay that contribution. And so you can argue all the defenses to contracts, but that's what they allege. And it alleges an obligation that you have. Well, I believe that the law is the CBA itself is the document that provides the obligation. And the amendment itself is viable and has authority during the term of the CBA. But once the CBA expires, then no obligation arises. And they could have, again, they could have, again, once we expressly gave notice of termination 90 days before the date of expiration, they could have attempted or made a claim for this exit contribution. Under the amendment, they did not. Why didn't the claim just simply vest at the time you gave notice of withdrawal? There's no provision that states that it vests or that they, the provision states, or that they have to make some sort of a claim calculation of what exactly the sum would be. But why does that have to occur after termination? Is that because you say the agreement says that? Well, I don't know if the agreement specifically states that. But I just know that obligations, and this is my understanding of labor law, and the Supreme Court's decisions have stated that the obligations arise during the course of the CBA. And if the exit contribution would accrue at the time that the party has exited the agreement. Isn't it also part of the body of labor law that if a CBA agrees that an obligation is going to survive the termination of the CBA, it has to be done so explicitly? Yes, Your Honor, that is. And so they had one other obligation explicitly surviving in the CBA, didn't they? Well, it states that in the amendment, yes, Your Honor, but not in the durational clause that would incorporate it. No, there was one other provision. What was it? Arbitration provision of some kind that survives. No, in the durational provision, it does state that there's a provision regarding grievances. Grievances, yeah, that survives. That survives, and that was in the durational clause. That was the only one. And under Caddy, the Court said, therefore, it reasoned. This is what Eastern District of Virginia. Therefore, the pension did not survive. So in response to that, they put another provision of an independent agreement that survives. And you said that they can do that. Well, I can say they can do it with the amendment, but the amendment survives only as long as the CBA is in existence. Well, then we have to ignore what the amendment says, right? That part of it, yes, Your Honor. That amendment can only, I think that the correct interpretation. The parties can't agree to have an independent agreement surviving the CBA? I believe that the. Explicit agreement? I do not believe that to be true. I believe that the CBA itself has to, once the CBA expires, that any liability and any responsibilities under the agreement also expire. Thank you, Your Honor. All right. Ms. McDermott. Counsel, before you get started, if I could suggest to you in opposing counsel, this may or may not affect our decision on finality, that you all submit a 28-J letter with the settlement agreement and a statement as to whether or not the contingency in that settlement agreement has been satisfied. Yes, Your Honor. Thank you. The employer's argument rests on this idea that somehow a document that is expressly incorporated by reference into a collective bargaining agreement doesn't hold the same weight as the terms of the actual CBA. And that's just not true. In a circumstance where a document is expressly incorporated by reference, the terms in that incorporated document are as if they are contained in the collective bargaining agreement. In this case, the terms of the trust document explicitly say that the right to collect or pay an exit contribution extends beyond the term of the collective bargaining agreement. Are there any limits in your mind as to the ability of the parties here to make, the entities to make a unilateral amendment to the trust agreement? So I think it's important to distinguish the unilateral cases cited by the district court judge below from what's happening in this case. In this case, the pension fund is not a party to the contract. It's a third-party beneficiary, and it is a Taft-Hartley plan, which means that it's made up of an equal number of employer trustees and union trustees. And in this case, under the express terms of the collective bargaining agreement, the employer not only agreed to be bound by the terms of the trust and any amendments to it, it expressly designated as its representatives the trustees on the fund. So this wasn't a case where one party to the contract was unilaterally modifying the terms. The right to modify, the right to amend was expressly granted to the trustees under the terms of the collective bargaining agreement. There are probably hundreds of these, not thousands of these, multi-employer plans across the country, and they would have similar language. That's correct. So I guess the answer to my question is yes, they bound themselves to whatever amendments would be made under this agreement. I don't know what the limits are or if there are limits to what the trustees can do, and I don't think that that's a question that the court needs to reach in this case. Here, there was a one-time, the requirement was to do a one-time payment of an exit contribution upon withdrawal. And the D.C. Circuit in UMWA v. Piston case actually approved a trust document that required continuing contributions post-expiration, regardless of whether or not a subsequent collective bargaining agreement was ever entered into. And the Supreme Court acknowledged the validity of that agreement in the Eastern Enterprises v. Apfel case. So we think given the state of that law, that a one-time exit contribution is well within the trustee's authority. When they negotiate the collective bargaining agreement, do they also include negotiations for the trust agreement? When you say— Or are the employees and employers who are trustees distinct from the negotiators for the collective bargaining agreement? There may be some overlap. I don't know about who was a representative in this case on the employer association. But there's not necessarily an overlap between the trustees on the pension fund and those that are negotiating the collective bargaining agreement. But the pension fund has representatives on both sides again. That's correct. It's a Taft-Hartley fund, so it's required by law to have equal representation of employer trustees and union trustees. If there's nothing further, we would ask that the court overturn the district court's case and we'd be remanded to proceed in accordance with the ruling. Thank you. We'll come down, adjourn the court for the day and come down and greet the council. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, G. Steven Agee, Albert Diaz